UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRIDA MARKO,

                Plaintiff,

v.

WILLIAM P. BARR, *et al.*,

                Defendants.

_____/

Case No. 2:18-cv-11089
District Judge Arthur J. Tarnow
Magistrate Judge Anthony P. Patti

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S NOVEMBER 2, 2018 MOTION TO COMPEL (DE 14), AS NARROWED BY THE JOINT STATEMENT OF RESOLVED AND UNRESOLVED ISSUES (DE 25)**

**I.    OPINION**

    **A.    Background**

Frida Marko applied for naturalization and appeared for an interview on or about June 15, 2017. On September 14, 2017, the United States Citizenship and Immigration Services (USCIS) denied her application. (DE 1 ¶¶ 12-14; DE 1-1, Form N-400.)

Ms. Marko requested a hearing and appeared for her interview on or about December 6, 2017; however, the USCIS re-affirmed its decision on December 6, 2017. (DE 1 ¶¶ 18-21; DE 1-2, Form N-336.) As the government Defendants would later explain, "[w]hile the September 2017 N-400 denial contains some

1

factual errors, USCIS's December 2017 decision denying Plaintiff's N-336 application sets forth in detail the factual and legal bases for USCIS's conclusion that Plaintiff was not lawfully admitted for permanent residence." (DE 16 at 18.)

On April 4, 2018, Ms. Marko filed this lawsuit, seeking declaratory and injunctive relief and a hearing on her naturalization application, the bases of which are alleged violations of the Immigration and Nationality Act (INA) and the Administrative Procedure Act (APA). (DE 1.) The May 30, 2018 scheduling order sets the discovery motion deadline for November 2, 2018 and the discovery deadline for December 3, 2018. (DE 10.)

### B.   Instant Motion

Currently before the Court is Plaintiff's November 2, 2018 motion to compel discovery as to: **(1)** redacted documents; **(2)** notes from USCIS Officers Brandee Pryor, Batol Makki, and Walla Najor; and, **(3)** Officer Pryor's non-responses to certain questions. (DE 14.) This motion stems in part from Plaintiff's August 31, 2018 request for production of documents. (DE 14-1 at 1-11.)

Defendants have filed a response, which reflects that they "produced Plaintiff's entire A-file [alien file], totaling nearly 300 pages of documents." (DE 16 at 9.) Defendants' October 1, 2018 document production included 14 fully redacted documents and 13 partially redacted documents. (*Id.*) Government counsel provided an updated privilege log on November 2, 2018. (DE 16 at 9-10,

DE 16-4.)  Plaintiff has filed a reply, in which she explains, *inter alia*, that she is "not requesting any secrets, only factual information and evidence about the Plaintiff and her immigration history."  (DE 17 at 3.)

Judge Tarnow referred this motion to me for hearing and determination.  A hearing was originally noticed for December 18, 2018, although it was twice re-noticed, in one case due to the partial government shutdown.  (DEs 18-20.)  I held a hearing on February 21, 2019, at which Attorneys Carrah L. Crofton and T. Monique Peoples appeared.  (DE 24.)

### C. Narrowed Issues

Oral argument focused on the issues as narrowed in the joint statement of resolved and unresolved issues, namely Defendants' continued assertion of privilege over six documents, comprised of 24 pages:  **(1)** MARKO00017-19 (database report); **(2)** MARKO00020-24 (database report); **(3)** MARKO00236-239 (USCIS adjudicator notes); **(4)** MARKO00243-244 (database record); **(5)** MARKO00246-250 (database record); and, **(6)** MARKO00253-257 (USCIS interoffice memo).  (DE 25.)

Plaintiff's counsel admitted at oral argument that she did not avail herself of the opportunity to ask "who, what, when, where, how and why" foundational questions regarding these documents during the officers' October 22, 2018 depositions, *i.e.*, following the initial production of documents.  (DE 16 at 9, DE

16-5, DE 16-6.) Moreover, while Plaintiff eventually served Pryor with post-deposition interrogatories (on November 8, 2018), she did not use requests for admission to obtain the factual information sought here by her motion to compel. (DE 16-7.) Thus, Plaintiff does not present the Court with much of a contextual record in support of her privilege challenge.

### D. Discussion

#### 1. The database reports and records (MARKO00017-19, MARKO00020-24, MARKO00243-244, MARKO00246-250)

##### a. The law enforcement privilege

The law enforcement privilege preserves the government's ability to "withhold from disclosure the identity of persons who furnish to law enforcement personnel information concerning violations of the law." *Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir. 1989) (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957) and 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2019 (1970)). To invoke the law enforcement investigatory privilege, "three requirements must be met:

> (1) there must be a formal claim of privilege by the head of the department having control over the requested information;
> (2) assertion of the privilege must be based on actual personal consideration by that official; and
> (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

4

*Moody v. Michigan Gaming Control Bd.*, No. 12-CV-13593, 2013 WL 3013862, at *4 (E.D. Mich. June 18, 2013) (Drain, J.) (citing *In re Sealed Case*, 856 F.2d 268, 271 (1988)).

### b. Assertions of the law enforcement privilege

Defendants assert the law enforcement privilege as to: **(i)** the June 15, 2017 Customs and Border Protection (CBP) Arrival and Departure System (MARKO00017-19); **(ii)** the June 15, 2017 CBP Computer Linked Application Information Management System (CLAIMS) (MARKO00020-24); **(iii)** the June 6, 2017 USCIS TECS ROIT (MARKO00243-244); and, **(iv)** the June 8, 2017 CBP TECS (MARKO00246-250). (*See* DE 16-4 at 2.)

In his November 5, 2018 declaration, USCIS Great Lakes District Director Mirash Dedvukaj explains that: "The withholdings are limited and narrowly tailored to only that information that is privileged." (DE 16-9 at 3 ¶ 4.) Frankly, the Court finds this statement to be vague and conclusory. Nonetheless, the Court is persuaded by Defendants' argument that "The Law Enforcement Privilege Protects Documents that Reveal DHS's Law Enforcement Techniques and Procedures." (DE 16 at 25-28.) In addition to describing each of these 4 items, the government Defendants explain:

> For the most part, these records indicate and identify the particular
> security and background checks and screenings pertaining to Plaintiff.
> Releasing this information would disclose DHS's law enforcement
> techniques and could allow potential violators to develop strategies to

5

circumvent those techniques, thereby risking the integrity of ongoing investigations.

(DE 16 at 27.)

Plaintiff challenges the database reports and records as containing "factual material, even if it is in 'report' or 'memo' form," and also appears to question whether Defendants' descriptions of these items warrant the protection they assert. (DE 17 at 3.)  However, even though each of the cases upon which Defendants rely concerns the Freedom of Information Act (FOIA), the Court nonetheless finds them persuasive.  *Strunk v. U.S. Dep't of State*, 905 F. Supp. 2d 142, 148 (D.D.C. 2012) (TECS "is 'a fundamental law enforcement tool,' for which, 'there is a great need to defend ... against any threatened or real risk of threat or compromise[.]'"), *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 384, 386-394 (S.D.N.Y. 2014) (regarding documents from either CBP's "TECS" computer system or CBP's Automated Targeting System ("ATS") database).  (DE 16 at 28.)  In the absence of case law stating otherwise, I conclude that the database records and reports described above are entitled to protection.

> **2.     The July 21, 2017 USCIS Interoffice Memorandum (MARKO00253-257) and the USCS N-336 Processing Worksheet Adjudicator interview notes (MARKO00236-239)**
>
> > **a.     Deliberative process privilege**

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1974). "The primary purpose served by the deliberative process privilege is to encourage candid communications between subordinates and superiors." *Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 939 (6th Cir. 1988). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions'...by protecting open and frank discussion among those who make them within the government." *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001).

The privilege, however, is not absolute and is narrowly construed. *Gen. Motors Corp. v. United States*, No. 07-14464, 2009 WL 5171807, at *1 (E.D. Mich. Dec. 23, 2009) (Roberts, J.). Here, I am informed by an oft-cited decision which reflects upon "sources of confusion in analysis of assertions of privilege by law enforcement agencies," in part, as follows:

> Similarly, courts could apply the "deliberative process" privilege to most kinds of information generated by police departments only if they are willing to stretch, in some instances almost beyond recognition, the policy rationale that supports that privilege. As

7

> originally developed, the deliberative process privilege was designed to help preserve the vigor and creativity of the process by which government agencies formulate important public policies. *See*, *e.g.*, *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881–82 (5th Cir. 1981). The principal idea that inspires the privilege is that the people who contribute to *policy* formulation will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies, and will be less shy about suggesting bold, creative (and sometimes hairbrained) policy alternatives, if they know that their work is not likely to be disclosed to the public. As I will suggest below, it is not at all clear to me that the basic assumption that informs this body of law is well-made. For present purposes, however, the point is this: the rationale that supports this privilege should fix the limits of its reach. The "deliberative process" privilege should be available only to communications that contribute to a deliberative process.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 658–59 (N.D. Cal. 1987) (Brazil, M.J.) (emphases in original). In addition, as described more recently by our Court of Appeals:

> To come within [the] deliberative process privilege, a document must be both "predecisional," meaning it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "deliberative," the result of the consultative process. Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of the agency, the key issue in applying this exception is whether disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency.

*Rugiero v. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (internal quotations and citations omitted).

### b. Assertions of the deliberative process privilege

Defendants assert the deliberative process privilege as to two items: **(i)** the USCS N-336 Processing Worksheet Adjudicator interview notes (MARKO00236-239), which it describes as "handwritten notes taken by Batol Makki during Plaintiff's N-336 interview[,]" which appears to have occurred on December 6, 2017; and, **(ii)** the five-page July 21, 2017 USCIS Interoffice Memorandum (MARKO00253- 257), which it describes as:

> . . . a two-page USCIS interoffice memo from Brandee Pryor, the USCIS officer who adjudicated Plaintiff's N-400, to an N-400 Review Panel. The document also includes a three-page attachment prepared by Ms. Pryor that has a timeline of certain dates and events that she deemed relevant and her analyses concerning Plaintiff's N-400 and recommendations for future agency action[;]

(DE 16 at 21, 23; DE 16-4 at 2; *see also* DE 1 ¶¶ 19-21, DE 16 at 20-25.) In his November 5, 2018 declaration Dedvukaj explains that: "The notes and the memo involve internal agency deliberation as it relates to the facts of the case, and the proper means to apply the controlling law and agency policy in the adjudication of Plaintiff's applications." (DE 16-9 at 3 ¶ 5.)

In reply, Plaintiff notes her "reason to believe factual information related to the reasons for the denial decisions are contained in Officer Pryor's memo and Officer Makki's notes, which Defendant claims were taken contemporaneously at the time of the N-336 interview." (DE 17 at 2.)

### (i) Interview notes (MARKO00236-239)

Plaintiff deposed Makki on October 22, 2018, and Makki testified that she took notes during the N-336 interview. (DE 16 at 10, DE 16-6 at 6-7; *see also* DE 14-1 at 17-21.) According to Defendants, "Ms. Makki's handwritten notes contain various questions posed and answers provided during the interview, and reflect her deliberation on how certain facts pertain to Plaintiff's N-400." (DE 16 at 21.) Defendants contend that "Ms. Makki's handwritten N-336 interview notes reveal the information that she deemed pertinent to extract from a larger universe of facts and reflect her judgment on the issues she found relevant to Plaintiff's N-336. Because her notes are both pre-decisional and deliberative, they are clearly protected." (DE 16 at 22.) Plaintiff contends that the notes "only contain[s] factual information about the Plaintiff, what was said during her interview, and what is contained in her alien file . . . ." (DE 17 at 5.)

At least one court has noted that "interview notes and summaries are routinely found to be subject to Exemption 5[,]" *i.e.*, "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested[.]" *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 169 (D.D.C. 2017), 5 U.S.C. § 552(b)(5). However, Defendants' reliance upon *Phillips v. Immigration &*

*Customs Enf't*, 385 F. Supp. 2d 296 (S.D.N.Y. 2005) and *Abramyan v. United States Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 66-67 (D.D.C. Dec. 4, 2013) is overshadowed by the treatment of these cases, respectively, in *Martins v. United States Citizenship & Immigration Servs.*, 962 F. Supp. 2d 1106, 1123 n. 9 (N.D. Cal. July 3, 2013) ("other, similarly non-binding authority has come out the other way with respect to the applicability of the deliberative process privilege to "factual" portions of interview notes . . . .") and *Gatore v. United States Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 53 (D.D.C. 2016) ("The defendant's motion for summary judgment shall therefore be denied without prejudice subject to the filing of updated *Vaughn* submissions.").

More to the point, as Plaintiff points out, "'the key issue in applying this exception is whether disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency.'" *Campbell v. Mack*, No. 16-CV-12922, 2017 WL 5150883, at *5 (E.D. Mich. Nov. 7, 2017) (Majzoub, M.J.) (quoting *Rugiero v. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001)), *objections overruled*, No. 16-CV-12922, 2017 WL 6174628 (E.D. Mich. Dec. 8, 2017) (Leitman, J.). (DE 17 at 3.) On or about February 22, 2019, government counsel provided copies of the USCS N-336 Processing Worksheet Adjudicator interview notes (MARKO00236-239) to this Court for *in camera* review. (DE 16 at 20-22.) Having reviewed these notes, the

11

Court concludes that the information therein is entirely factual and is basically a recitation of what was asked and what was said in Plaintiff's interview. They do not appear to expose the Agency's decision-making process, nor do they appear to be deliberative. In other words, "because this document is comprised of factual material, namely summaries of the evidence gathered in the investigation, it is not protected by the deliberative process privilege." *Campbell*, 2017 WL 5150883, at *6 (referencing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344-346 (E.D. Pa. 1973)).[1]

As such, there is no need to consider whether the factual information is segregable from the deliberative impressions. If the government Defendants are going to proffer facts from the USCIS interview upon which the Agency will justify its decision to deny naturalization, Plaintiff should have the opportunity to challenge the accuracy of those facts and impeach Officer Makki on any inconsistencies between her testimony and her contemporaneous notes.

### (ii) Memorandum (MARKO00253- 257)

According to Defendants, the July 21, 2017 memo and its attachment "*reflect*[] the position taken by certain USCIS counsel and supervisors on the

---

[1] Although *Frankenhauser* has been the subject of some negative treatment, this Court has acknowledged that "Other courts use the identical test set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), superseded on other grounds by rule change as recognized by *Crawford v. Dominic*, 469 F. Supp. 260 (E.D. Pa. 1979)." *Hamama v. Adducci*, No. 17-CV-11910, 2018 WL 2445042, at *3 n.1 (E.D. Mich. May 31, 2018).

issues raised in Ms. Pryor's memo." (DE 16 at 23 (emphasis added).) The government Defendants argue that "[t]he entire USCIS interoffice memo is quintessentially deliberative." (*Id*.) The Court is persuaded by Defendants' related argument. (*See* DE 16 at 23-25.) *See also, e.g., Schell v. U.S. Dep't of Health & Human Servs.*, 843 F.2d 933, 942 (6th Cir. 1988) ("'a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made.'") (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)); *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) ("CPAC [Cultural Property Advisory Committee] reports are properly withheld under Exemption 5 insofar as they are 'inter-agency or intra-agency memorandums or letters' that are deliberative and pre-decisional.") (citing 5 U.S.C. § 552(b)(5)).

Even if the July 21, 2017 memo concerning Plaintiff's N-400 application "highlights certain facts that Ms. Pryor culled from her review of Plaintiff's file and interview with Plaintiff . . . [,]" Defendants also contend that the memo "undeniably *reflects* the agency's opinions, analyses, and recommendations on how to adjudicate Plaintiff's N-400[,]" which ultimately occurred on September 14, 2017. (DE 16 at 23 (emphasis added), DE 1-1 at 21-26.) This is fundamentally distinct from the officers' contemporaneous notes from the N-336

13

interview, which are discussed above, and which appear to have occurred on the same date as the N-336 adjudication. Therefore, the Court disagrees with Plaintiff's characterization that the June 21, 2017 memo "only contain[s] factual information about the Plaintiff, what was said during her [related June 15, 2017] interview, and what is contained in her alien file . . . ." (DE 17 at 5.) In addition, even if the memo contains some factual material, the Court has no reason to believe that the factual material could be meaningfully segregated from the deliberative information. *See Moody*, 2013 WL 3013862, at *3 ("factual material may be withheld when it 'is so inextricably connected to the deliberative material that its disclosure would *reveal* the agency's decision making processes ... or when it is impossible to segregate in a meaningful way portions of the factual information from the deliberative information.'") (emphasis added) (quoting *Nadler v. U.S. Dep't of Justice*, 955 F.2d 1479, 1491 (11th Cir. 1992), *abrogated by U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993)).[2]

---

[2] In another portion of *Nadler*, the court held that "the sources who provided information to the FBI during the course of its investigation of Nadler, including the public official who first brought to the Government's attention the allegation that Nadler had accepted a bribe, were confidential sources." *Nadler*, 955 F.2d at 1487. Later, after acknowledging this portion of *Nadler*, the Supreme Court held that "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." *Landano*, 508 U.S. at 181. Thus, it was abrogated on other grounds.

Finally, Plaintiff deposed Pryor on October 22, 2018, and thereafter served Pryor with five interrogatories on November 8, 2018. (DE 16 at 11-12, DE 16-5, DE 16-7; *see also* DE 14-1 at 12-16.) The joint statement notes that Plaintiff has received responses to interrogatories for Brandee Pryor. (DE 25 at 2.) Plaintiff does not appear to have served requests for admission. *See* Fed. R. Civ. P. 36. Thus, Plaintiff had an opportunity to question Pryor about any factual information in the July 21, 2017 memo. At the very least, Plaintiff appears to have underutilized her opportunity to get information about the memo by way of common discovery tools.

## II. ORDER

Upon consideration, Plaintiff's motion to compel (DE 14), as narrowed in the joint statement of resolved and unresolved issues (DE 25), is **GRANTED IN PART** and **DENIED IN PART**. In accordance with the foregoing discussion, and within seven (7) days of the date of this order, Defendants shall serve upon Plaintiff a copy of the 4 pages of USCS N-336 Processing Worksheet Adjudicator interview notes without redaction (MARKO00236-239). Defendants need not serve copies of the other 20 pages at issue.

**IT IS SO ORDERED.**

Dated: March 18, 2019    s/*Anthony P. Patti*
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on March 18, 2019, electronically and/or by U.S. Mail.

s/Michael Williams<br>
Case Manager for the<br>
Honorable Anthony P. Patti