UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FRIDA MARKO,<br><br>    Petitioner,<br><br>v.<br><br>WILLIAM BARR, ET AL.,<br><br>    Respondents.<br>_____/ | Case No. 18-11089<br><br>SENIOR U.S. DISTRICT JUDGE<br>ARTHUR J. TARNOW<br><br>U.S. MAGISTRATE JUDGE<br>ANTHONY P. PATTI |

**ORDER DENYING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT [27]**

    Petitioner Frida Marko is a citizen of Albania who has been a legal permanent resident of the United States since 2008. Before her arrival in the United States, Petitioner submitted a nonimmigrant visa application on at least two occasions: first in March of 1999 and second in September of 1999. The former application was denied, but the latter was granted. Petitioner came to the United States on the approved nonimmigrant visa and remained in Michigan thereafter. In time she became a Legal Permanent Resident and applied for naturalization. After her application for naturalization was denied on the basis that she made fraudulent statements on her September 1999 application, Ms. Marko brought this suit for judicial review.

## FACTUAL BACKGROUND

In 1999, Petitioner had two passports. One was issued in November 1998 to "Frida Marko," her married name, and contained the names and birthdates of her children. (Dkt. 27-10, pg. 4). Her own birthdate was listed, correctly, as June 10, 1957. (*Id.* at pg. 3). This passport was valid until 2003. (*Id.*). A second passport was issued in September of 1999 to Frida Tomco, Petitioner's maiden name. (Dkt. 27-13, pg. 3). On this passport, the page for children was blank, and Petitioner's birth date was listed as July 9, 1957. (*Id.* pg. 3-4). The passports also have different "personal numbers." (*Id.*).

Petitioner first applied for a nonimmigrant visa to the United States in March of 1999, as Frida Marko, to attend a relative's baptism in Michigan. (Dkt. 27-2, pg. 38-39). She paid "[m]aybe a thousand dollars" to a professional to assist her in preparing her visa, but her application was ultimately unsuccessful. (*Id.* at 42-44). State Department records show Petitioner, as Frida Marko, also applied for a visa in May of 1999 (Dkt. 27-9), but Petitioner denies that she applied then. In its visa section, her Marko passport bears a stamp that reads, "U.S. EMBASSY SKOPJE APPLICATION RECEIVED ON MAR 08 1999." (Dkt. 27-10, pg. 25). Directly beneath, another stamp reads "MAY 27, 1999." (*Id.*). The March visa application was denied under Section 214(b) of the Immigration and Nationality Act ("INA") (Dkt. 34-2), which provides for a rebuttable presumption that every applicant is an

immigrant unless he or she proves to be eligible for non-immigrant status. INA § 214(b).

Petitioner applied again for a nonimmigrant visa on September 10, 1999. For this application she hired a woman who held herself out to be an employee of the U.N. Population Fund. (Dkt. 27-2, pg. 46). The woman offered to help Petitioner fill out an application to attend a seminar on business development in Washington, D.C. (*Id.* at 47). Petitioner paid this woman $5,450 to register for the seminar and $550 to fill out the application. (*Id.* at 50). Petitioner testified that she had arranged the visit both to attend the conference and to visit her family. (*Id.* at 54). Her daughters and husband were already living in the United States. Petitioner now suspects that she was deceived by this woman, and that "all of this was done for money." (*Id.* at 57). Petitioner remembers little of her subsequent interview at the U.S. Embassy. She testified that she understood no English at the time, and that another woman with whom she was travelling spoke to the officer at the embassy. (*Id.* at 59-62).

For this visa application, Petitioner applied using her Frida Tomco passport. As a result, her date of birth is listed as July 7, 1957. (*Id.* at 63). Her husband's name is listed (incorrectly) as Niko Tomco (*Id.*). The visa indicates that Petitioner was a Finance Assistant for the U.N. Population Fund. (*Id.* at 67). It is undisputed that all of these facts are incorrect. Petitioner maintains, however, that she could not have read the document and that her signature at the bottom of the application is not

authentic. The application was approved, and Petitioner was given a one-month nonimmigrant visa. (*Id.* at 105).

A January 31, 2000 "Refusal Worksheet" noted as follows:

The applicant applied for and received a [nonimmigrant visa] at this Embassy on September 10, 1999. She stated she was a Finance Assistant for the UN Population Fund Office in Tirana travelling on official business and presented a letter to that effect. AFU Tirana investigation revealed the document to be a forgery. (Dkt. 27-8).

The conference was to be held from October 4 to October 15th. (Dkt. 27-2 at 88). Petitioner flew to Washington D.C. on September 23, 1999 and then caught a connecting flight to Michigan, where she reunited with her husband and daughter. (*Id.* at 88-90). Petitioner testified that her husband was injured at the time and in the process of applying for asylum, and that her testimony could be helpful to his case. She decided to remain in Michigan, reasoning that if she returned to Albania she would not be permitted to return to the United States to testify on his behalf at his asylum interview. (*Id.* at 110).

In 2009, Petitioner acquired Permanent Legal Resident status. She subsequently applied for naturalization in 2017. Her naturalization application was denied. On October 16, 2017, she petitioned for a rehearing of this denial and appeared for a hearing on December 6, 2017. (Dkt. 27-11). The Notice of Decision reaffirmed her denial and made the following findings.

On September 14, 2017, USCIS denied your form N-400 because you were not lawfully admitted for permanent residence in accordance with INA §

318…A review of USCIS records indicates that in 1999 you filed a nonimmigrant visa application on grounds that you were employed in the UN Population Fund Office (UNFPO) and that you were travelling to the United States on official business on behalf of this entity. It was later discovered that your application was fraudulently submitted and the supporting documents were forged. Your non-immigrant visa application was denied and you were deemed inadmissible to the United States pursuant to INA § 212(a)(6)(C)(i) as an alien who, by fraud, or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or who has procured) a visa, other document, or admission into the United States or other benefit under the Act. (Dkt. 27-11).

### PROCEDURAL HISTORY

Petitioner filed her Complaint on April 4, 2018. [Dkt. # 1]. Respondents filed a Motion for Summary Judgment [12] on April 12, 2019. That motion was fully briefed, and the Court held a hearing [32] on July 31, 2019, at which time it gave the parties an opportunity to provide supplemental briefing addressing the issues raised. Plaintiff filed her supplemental brief [33] on September 19, 2019. Defendants filed their supplemental brief [34] on October 9, 2019.

### STANDARD OF REVIEW

"Under 8 U.S.C. § 1421(c), a district court has broad authority to review the denial of an application for naturalization." *Shweika v. Department of Homeland Security*, 723 F. 3d 710, 713 (6th Cir. 2013). If an applicant requests judicial review, the district court "shall make its own findings of fact and conclusions of law," rather than conduct an administrative review. *Id.*

A Court conducting a *de novo* review is not bound by factual or legal conclusions from the administrative record. *Kariuki v. Tarango*, 709 F.3d. 495, 502 (5th Cir. 2013). Nevertheless, "the burden is on the alien applicant to show his eligibility in for citizenship in every respect," and "doubts should be resolved in favor of the United States and against the claimant." B*erenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 671 (1967).

Though 8 U.S.C. § 1421(c) mandates that the reviewing court conduct a *de novo* hearing at the request of the petitioner, federal courts have not required an evidentiary hearing where there is no genuine dispute as to any material facts. *Ampe v. Johnson*, 157 F.Supp.3d 1, 7-8 (D.D.C. 2016) (citing *Chan v. Gantner*, 464 F.3d 289, 295-96 (2d Cir. 2006) and *Beleshi v. Holder*, No. 12-11681, 2014 WL 4638359 at *4 (E.D. Mich. Sept. 16, 2014). Indeed, a court may, at its discretion, conduct its *de novo* review in the context of a summary judgment ruling. *Lucaj v. Dedvukaj*, 13 F. Supp. 3d 753, 765 (E.D. Mich. 2014).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Movant bears the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-movant lacks evidence to support an

essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Non-movant cannot rest on the pleadings and must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87. Nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Rule 56(e)); *see also United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The burden to prove eligibility for naturalization by a preponderance of evidence is on the applicant. 8 C.F.R. § 316.2(b). The applicant will be declared inadmissible, if his or her entry into the United States was acquired by means of fraud or misrepresentation pursuant to INA § 212(a)(6)(C)(i). Although petitioner bears the ultimate burden of persuasion to demonstrate her eligibility for citizenship, the burden at the summary judgment stage is on the respondents to demonstrate why Petitioner will not be able to make that showing as a matter of law. *Ampe*, 157 F.Supp.3d at 8.

## ANALYSIS

The question on *de novo* review is whether Petitioner violated § 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA"), which reads as follows:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

Because this is a motion for summary judgment, the Court will draw all reasonable inferences in favor of Petitioner and ask whether there is a material question of fact as to whether Petitioner committed fraud or willfully misrepresented a material fact on her visa application.

Though the INA has not defined fraud, the Board of Immigration Appeals ("BIA") has held that fraud "consist[s] of false representations of a material fact made with knowledge of its falsity and with intent to deceive the other party." *Ortiz-Bouchet v. U.S. Atty. Gen.*, 714 F.3d 1353, 1356–57 (11th Cir. 2013) (quoting *Matter of G–G–*, 7 I. & N. Dec. 161, 164 (BIA 1956)).

Willful misrepresentation, by contrast, does not require an intent to deceive. *Bazzi v. Holder*, 746 F.3d 640, 645 (6th Cir. 2013) ("Willful misrepresentation itself requires no more than 'knowledge of the falsity' of facts presented to an immigration officer; unlike fraud, misrepresentation requires no intent to deceive.") (quoting *Parlak v. Holder,* 578 F.3d 457, 463–64 (6th Cir.2009)). A charge of material representation comes down to the "the two-part inquiry: did the alien (1) willfully misrepresent (2) a fact that was material." *Id.* "The element of willfulness is satisfied by a finding that the misrepresentation was deliberate and voluntary." *Witter v. I.N.S.*, 113 F.3d 549, 554 (5th Cir.1997). A fact's materiality is determined according

to the effect that the fact would have had on the ultimate immigration decision had the truth been known. *Bazzi*, 746 F.3d at 645-46 (citing *Petkiewytsch v. I.N.S.,* 945 F.2d 871, 881 (6th Cir.1991)).

Respondents can prevail by showing either fraud or willful misrepresentation of material fact.

**Fraud**

Taken in the light most favorable to Petitioner, the evidence does not support a finding of fraudulent intent on Petitioner's behalf. Petitioner has provided testimonial and documentary evidence from several sources indicating that she did not speak English in 1999. (Dkt. 27-2, pg. 47; Dkt. 27-3, pg. 32; Dkt. 33-4; Dkt. 33-2; Dkt. 33-6). Respondent has produced no evidence to refute these claims. During her deposition, Petitioner recalled paying a woman $6,000 to attend a conference and visit her family. Respondents have produced circumstantial evidence that Petitioner knew that the conference was a sham and was holding herself out as an employee of the U.N. Population Fund. But without corroborating evidence that Petitioner was a willing participant in the scam, Respondents cannot carry their Rule 56 burden as to fraudulent intent.

Respondents argue that Petitioner's use of the Frida Tomco passport demonstrates an intent to deceive. They argue that Petitioner's first two visa applications were likely denied because she had two daughters and a husband living

in the United States, and therefore was likely to immigrate, and that Petitioner correctly surmised that she would have better luck applying for her visa if she applied on a passport that was not traceable to her husband, daughters, or prior applications. The timing of the issuance of her second passport, received shortly before her September 1999 visa application — despite the fact that her other passport was valid until 2003 — presents circumstantial evidence that she applied for the Tomco passport precisely in order to deceive the visa application screeners.

Petitioner has offered more innocent explanations. The first was that Albanian passports had formerly expired within a year, and that she didn't check the expiration date on her Marko passport before applying for her Tomco passport. The Court found on the July 31 hearing that this explanation is simply too implausible to raise a genuine fact question. (Dkt. 32, pg. 6). Petitioner's supplemental brief asserts that Petitioner thought she would need a new passport in her maiden name to travel for business, because she used that name for business. This explanation is entirely unsupported by deposition or affidavit evidence. The only evidence produced is that which was noted at the hearing, that Frida Tomco was the name on the invoice she paid to attend her conference. (*Id.* pg. 6-7). An attorney's assertion that a Petitioner will testify to a factual theory is insufficient to resist summary judgment, absent corresponding testimonial evidence.

Nevertheless, Petitioner's lack of an adequate explanation for why she had a separate passport in her maiden name will not transform the use of two passports into *prima facie* evidence of fraud. Absent some direct evidence, the suggestive nature of the timing and circumstances surrounding Petitioner's use of her second passport is not sufficient to meet Respondents' high bar on summary judgment.

**Willful Misrepresentation of Material Facts**

The next question is whether Petitioner willfully misrepresented material facts. To answer this question in the affirmative, Respondent "does not need to show intent to deceive; rather, knowledge of the falsity of the representation will suffice." *Mwongera*, 187 F.3d at 330. This case still poses a question of material fact as to whether Petitioner knew that her visa application represented her as an employee of the U.N. Population Fund. She testified that if anyone had asked, she would have said that she had a pharmacy and not that she was a U.N. employee. (Dkt. 27-2, pg. 74). A preparer's misrepresentations are not imputed to the applicant absent the applicant's knowledge that her application contains those misrepresentations. *Ortiz-Bouchet v. U.S. Att'y Gen.*, 714 F.3d 1353, 1356 (11th Cir. 2013) (holding that a petitioner did not make willful misrepresentations where he hired someone to "solve [his] status problem," who then submitted fraudulent documents on his behalf and,

according only to petitioner's testimony, forged his signature); *Wolde v. Lynch*, 166 F.Supp.3d 70, 72 (D.D.C. 2016) (holding that a petitioner did not make willful misrepresentations where the owner of an internet café completed and submitted a misleading Electronic Diversity Visa Entry Form on her behalf).

Respondents come much closer to proving willful misrepresentation as to false information on the Tomco passport, which was provided to the preparer by Petitioner. The birthday was wrong, her children were omitted, and her "personal number" was different. These grounds, however, are insufficient to prove willful misrepresentation. The importance, if any, of the personal number is not elaborated in the record, and it is unclear if it were even entered into the visa application. Further, Ms. Marko testified that she gave her visa preparer her actual birthdate. (Dkt. 27-2, pg. 50). Nor is there any evidence in the record that Petitioner misrepresented the existence of her children to the preparer or asked the preparer to leave her children out of the application. (*See id*, pg. 95). In short, the use of the Tomco passport, though troubling, only *suggests* that Petitioner willfully misrepresented the data it contained. Even if willful misrepresentation were established as to the information on the Tomco passport, Respondents have not carried their burden on materiality.

"[M]ateriality of the misrepresentations is established where the government shows that disclosure of the concealed information probably would have led to the

discovery of facts warranting the denial of a visa." *Petkiewytsch*, 945 F.2d at 881; *see also United States v. Kalymon*, No. 04-60003, 2007 WL 1012983 *17 (E.D. Mich. Mar. 29, 2007) ("A misrepresentation is 'material' if it would have a natural tendency to influence the relevant decision-maker's decision.") (citing *Kungys v. United States,* 485 U.S. 759, 770-71 (1988)). Whether a statement or omission is material is a question of law, but the legal determination "must be made in the context of a developed factual record." *Ampe*, 157 F.Supp.3d. at 17 (citing *Kungys,* 485 U.S. at 770-71. The BIA has offered the following two-part analysis to determine whether facts are material or not. A statement is material

> if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that [she] be excluded.

*Mwongera v. United States*, 187 F.3d 323, 330 (3d Cir. 1999) (quoting Matter of Kai Hing Hui, 151 I. & N. Dec. 288, 289 (BIA 1975)).

The fact that Petitioner was not an employee of the U.N. Population fund was clearly material, as her purported employment by the fund was the stated reason for her visit to the United States. Petitioner's birthday, number of children, and personal number are all of questionable materiality, however. Though Respondents argued in their supplemental briefing that Petitioner's family in the United States strengthened the statutory presumption that she would attempt to immigrate if given a nonimmigrant visa, this is supposition. The denial form only lists the statute number.

The statute contains no mention of family. There is no evidence on the record that Petitioner's September 1999 visa would have been denied had the embassy been aware while the visa was being processed that Petitioner's married name was Marko, that she had two children, and that she was born on June 10 not July 9.

Caselaw suggests that facts rising to the level of materiality tend to be much more significant than such superficial data. *See, e.g., Bazzi*, 746 F.3d at 641-42 (Petitioner willfully misrepresented material facts where he engaged in a sham divorce in order to be eligible for a visa for an unmarried child); *Parlak*, 578 F.3d at 461-62 (Petitioner willfully misrepresented a material fact where he concealed his prosecution for engaging in terrorist activity); *United States v. Ahmed*, No. 12-951, 2017 WL 6508570 *1-4 (S.D. Ohio Sept. 20, 2017) (Defendant willfully misrepresented material facts where he concealed trips that disrupted the statutory continuous residency requirement); *Kalymon*, 2007 WL 1012983 at *4-8 (Defendant willfully misrepresented material facts where he lied about his war-time membership in a paramilitary group allied with the Nazis).

By contrast, courts have found that more egregious misrepresentations than those on the Tomco passport were not material. *See, e.g., Xing Yang Yang v. Holder*, 770 F.3d 294 (4th Cir. 2004) (An immigration judge erred for finding that an asylum-seeker made material representations based on an adverse credibility determination); *Forbes v. I.N.S.,* 48 F.3d 439, 440-42 (9th Cir. 1994) (Petitioner represented that he

had never been arrested though he had been arrested on a charge that was later dismissed); *Ampe*, 157 F.Supp.3d at 5-6 (Petitioner did not willfully misrepresent material facts where she omitted her children from a marriage with her second husband from a status adjustment form, even though her status was predicated on her marriage to her first husband.). False biographical data, standing alone, does not rise to the level of material misrepresentation.

## Conclusion

This threadbare factual record in this case does not support summary judgment. Petitioner and her husband have testified tentatively and incompletely about events that transpired over twenty years ago. Copies of the March and (disputed) May visa applications are unavailable. No testimony and little record is available from any of the embassy officials or customs officials who spoke with, or did not speak with, Petitioner in 1999. The woman who prepared Petitioner's application is unknown. No evidence is available on what type of facts would be "material" for nonimmigrant visa applicants from Albania in 1999. In sum, the evidence in this case does not answer questions of material fact on Petitioner's level of intent regarding the incorrect information supplied on her September 1999 visa application form. A denial of naturalization review is a fact-intensive form of *de novo* review. Such an inquiry requires a thorough record and "would benefit from a

hearing that would permit Petitioner to tell her story but also subject her to cross-examination." *Ampe*, 157 F.Supp.3d at 21.

Accordingly,

**IT IS ORDERED** that Respondents' Motion for Summary Judgment [27] is **DENIED**.

**SO ORDERED**.

<br>

                                                    s/Arthur J. Tarnow
                                                    Arthur J. Tarnow
Dated: October 29, 2019            Senior United States District Judge